IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ROY WILMOTH, JR.                                                                              PLAINTIFF

v.                                                               CIVIL ACTION NO: 3:20-CV-120-NBB-RP

ALEX M. AZAR, II in his official capacity
as Secretary of the United States Department
of Health and Human Services                                       DEFENDANT

## ROY WILMOTH, JR.'S REPLY IN SUPPORT OF HIS
## MOTION FOR SUMMARY JUDGMENT

Roy Wilmoth, Jr.'s ("Mr. Wilmoth") motion for summary judgment should be granted.

### DISCUSSION

**A.**     **The Elements of Collateral Estoppel Are Present**

      **1.**     **The Issues Are Identical/The Issue Was
Actually Litigated in the Prior Proceeding**

The Secretary does not allege that the issue of whether TTFT was "medically reasonable and necessary" and a Medicare covered benefit for Mr. Wilmoth was somehow different between, *e.g*, July 2018 (when ALJ Petrylak found that it was covered) and June 2018 (when ALJ Byrant found that it was not). Likewise, the Secretary does not allege that that issue was not actually litigated. *See* Dkt. # 61 at 8.

Instead, the Secretary merely alleges that each decision concerned the months that were the subject of the requests for coverage and that the conclusions therein were somehow limited to those cases. That is merely an allegation that collateral estoppel can never apply and that only claim preclusion can. That is clearly erroneous. It has long been settled that where two causes of action are the same, claim preclusion may apply. By contrast, where the causes of action are different but the facts/issues are the same, issue preclusion (*i.e.*, collateral estoppel) may apply.

For example, in *Tait v. Western Maryland Ry. Co.*, 289 U.S. 620 (1933), the taxpayer (Western) obtained a favorable ruling on tax deductions related to certain bonds for the years 1918 and 1919. Thereafter, when the taxpayer sought the same deductions for the years 1920-1925, the Commissioner (Tait) denied them. As explained by the Supreme Court, the United States was estopped from denying the deductibility of the bonds for 1920-1925 as a result of collateral estoppel based on the 1918 and 1919 judgment. *Id.* at 626-27. *See also Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3rd Cir. 1974) ("Rare would be the case in which counsel could not conjure up some factual element that has changed between adjudications.", *citing Internal Revenue v. Sunnen*, 333 U.S. 591 (1948)).

If the Secretary's position were correct, the Supreme Court could have never reached the decision it did in *Tait* because the first case concerned taxes for 1918 and 1919 while the second case concerned taxes for 1920-1925. Obviously, that is erroneous.

Thus, the question is not whether ALJ Bryant's decision covers the month of June 2018, while, for example, ALJ Petrylak's decision covers the month of July 2018. Instead, the question is whether there is a material difference between June 2018 and July 2018 as to whether TTFT is "medically reasonable and necessary" and a Medicare covered benefit for Mr. Wilmoth. As shown by Mr. Wilmoth, there is no material difference and the Secretary does not dispute that fact. This same analysis applies to the question of the whether the same issue was actually litigated in the prior proceedings.

The issues are identical and the issue was actually litigated in the prior proceedings.

    **2.    The Secretary Had a Full and Fair Opportunity To Litigate in the Prior Proceeding**

As Mr. Wilmoth noted in his moving papers, the Fifth Circuit has articulated slightly different formulations of the test for collateral estoppel. *See* Dkt. #60 at 3, n. 3. Some of those

formulations include a test for whether the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate (*e.g., Wehling v. Columbia Broadcasting System*, 721 F.2d 506 (5th Cir. 1983)), while others do not (*e.g., Southmark v. Coopers & Lybrand*, 163 F.3d 925 (5th Cir 1993)). Accordingly, if the *Southmark* formulation is adopted, then this Court need not consider the issue. Regardless, the Secretary had a full and fair opportunity to litigate in the prior proceeding.

None of the material facts on this issue appear to be disputed. That is, the Secretary appears to concede that he had the full right to litigate every issue in the various proceeding involving Mr. Wilmoth. *See* Dkt. #61 at 8-11 ("These data show that the Secretary was eligible to appear in … 39,624 of the ALJ hearings requested in fiscal year 2019."). Given the Secretary' admission, that should be the end of the inquiry.

Rather than "opportunity to litigate", the Secretary merely alleges that his policies have resulted in so many cases he (or the United States more generally) would find it challenging to appear in each of them, if he so chose. That is, the Secretary alleges that his policies have so multiplied the proceedings (*e.g.*, eight ALJ decisions for Mr. Wilmoth alone) that collateral estoppel should not be applied and the cycle continued without end. To state the proposition is to refute it.

Indeed, in a footnote, the Secretary appears to go even farther. *See* Dkt. #61 at 11, n. 14. There, the Secretary appears to allege that he is generally busy and, therefore, that the common law of collateral estoppel should not apply. Collateral estoppel is a feature of the common law which derives from "the usages and customs of immemorial antiquity." *See Western Union Telegraph Co. v. Call Publishing Co.*, 181 U.S. 92, 102 (1901). Thus, absent clearly expressed Congressional intent to abrogate collateral estoppel, it cannot be tossed aside merely because the

Secretary alleges his "counsel has numerous responsibilities."

Mr. Wilmoth encourages the Court to consider how it would respond if any large entity made the same claim. For example, Mr. Wilmoth doubts the Court would be receptive to a claim by Entergy that collateral estoppel should not apply to it because Entergy is a big organization, its "counsel has numerous responsibilities", and it is involved in so many suits it would prefer not to be bound by the outcomes, etc. Just as there would be no merit to such a claim by Entergy, there is no merit to the claim by the Secretary.

With regard to the actual numbers, the Secretary has retreated from the representation he made in other cases that "over 400,000 Medicare claim appeals that are filed each year at the ALJ level." In this case, the Secretary now offers a number less than $1/10^{th}$ what he previously represented—39,624. *See* Dkt. #61 at 10. With regard to represented beneficiary ALJ appeals, it is beyond belief that the Secretary could not appear in 2,602 represented beneficiary requested ALJ appeals or the estimated 1,197 actual represented beneficiary ALJ hearings in FY2019 (if the Secretary chose to appear rather than rely on the fact that the beneficiary still bears the burden of proof). Even assuming the Secretary's figure of 18,108 requested ALJ hearings in FY2019 where he could appear, again, it is beyond belief that it would be "practically impossible"/"virtually impossible" for the Secretary to appear in each one (if he so chose).[1] *See* Dkt. #61 at 10-11. How could that be the case when the agency has a FY2020 budget in excess of $1.2 *trillion* dollars?[2]

With regard to the "backlog" of pending claims, as pointed out in Mr. Wilmoth's papers, the Secretary is under a court order to entirely eliminate that backlog by the end of FY2022. *See*

---

[1] The Secretary's citation to the *Christenson* case is troubling. *See* Dkt. #61 at 10-11. There, the Secretary never revealed the true number of cases he could actually appear in until after the judgment was entered. Indeed, the Secretary's conduct in this regard is one of the issues in the pending appeal.

[2] https://www.hhs.gov/about/budget/fy2020/index.html

Dkt. #63 at 10-11.  Moreover, the Secretary's citation to a status report filed in June 2020 about the backlog demonstrates one of the problems counsel has had in all of these cases.  *See* Dkt. #61 at 10.  For some reason, the Secretary simply refuses to provide current data.  Thus, in a brief filed on November 13, 2020, the Secretary cites to a status report filed on June 26, 2020, when a status report filed on September 24, 2020 was equally available.  *See* Dkt. #61 at 10.  As shown there, the backlog through Q3 2020 was ~200,000 cases (rather than the ~417,00 mentioned in the Secretary's papers), again, with a court order to reduce it to ~100,000 cases by the end of FY2021 and eliminate it entirely by the end of FY2022.  Thus, whatever challenges there may have been, they are momentary, while collateral estoppel is a fundamental principle of Anglo-American law.

Rather than "practically impossible"/"virtually impossible", what the Secretary appears to assert is that he would prefer not to be bound by the results of litigation and would prefer that his litigation opponents (including brain cancer patients) spend their resources/lives litigating the same issues *ad infinitum* with inexplicably conflicting results.  Preventing that is the very purpose of collateral estoppel.

Again, Mr. Wilmoth contends that this is all irrelevant because the Supreme Court has affirmed collateral estoppel applies against the United States no matter how many litigations there are.  *See U.S. v. Mendoza*, 464 U.S. 154 (1984).  Nevertheless, to the extent the Court wishes to consider the issues, the Secretary's claims are ill founded.

The Secretary had a full and fair opportunity to litigate in the prior proceedings.

**B.**     **The Secretary's General Claims About Collateral Estoppel**

As noted in Mr. Wilmoth's papers, there is a presumption of collateral estoppel and the Secretary bears the burden of overcoming the presumption by demonstrating a Congressional intent to that the common law of collateral estoppel should be abrogated.  *See* Dkt. #60 at 4-5.

Here, the Secretary did not overcome the presumption and collateral estoppel applies to Medicare cases.

1. *De Novo* **Review Is Consistent With Collateral Estoppel**

As noted in Mr. Wilmoth's papers opposing the Secretary's motion for summary judgment, *de novo* review of ALJ decisions by the Council/DAB is fully consistent with collateral estoppel. *See* Dkt. #63 at 4-5. In the interests of brevity, Mr. Wilmoth will not repeat those arguments here. Suffice it to say, *de novo* review is compatible with the pre-existing practice of collateral estoppel and the presumption has not been overcome. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 (1994).

Not one of the cases the Secretary cites in support of his arguments concerns mutual collateral estoppel. *See* Dkt. #63 at 6. *Porzecanski v. Azar*, 943 F.3d 472 (D.C. Cir. 2019) (equitable estoppel); *Almy v. Sebelius*, 679 F.3d 297 ("arbitrary and capricious" standard); *W. Texas LTC Partners, Inc. v. Dep't of Health and Human Services*, 843 F.3d 1043, 1047 (5th Cir. 2016) (while unclear, appears to relate to non-mutual collateral estoppel); *Int'l Rehabilitative Sciences, Inc. v. Sebelius*, 688 F.3d 994 (9th Cir. 2012) ("arbitrary and capricious" standard); *Taransky v. Secretary of U.S. Dep't of Health and Human Services*, 760 F.3d 307, 391 (3rd Cir. 2014) ("arbitrary and capricious" standard).

2. **The Secretary's Other Comments**

The Secretary includes a number of other comments in passing but makes no effort to develop these arguments. *See* Dkt. #61 at 6-7. For example, the Secretary asserts that unappealed ALJ decisions are not "final" (*see* Dkt. #61 at 6, n. 7), but makes no effort to explain how this is so. No avenue for altering an unappealed ALJ decision after 60 days is offered and the Secretary does not deny that such a decision marks the end of the agency's decision-making process from

which rights are determined. *See Smith v. Berryhill*, 139 S. Ct. 1765, 1775-75 (2019). Thus, these decisions are "final." *See also* 42 C.F.R. § 405.1048(a) ("The decision of the ALJ … is binding on all parties unless …"). Likewise, the Secretary asserts that he has the power to issue regulations, but makes no effort to explain how that meets any of the test for overcoming the presumption. Unsupported as it is, the Secretary did not meet his burden to overcome the presumption.

The Secretary's "presentment" and "channeling" remarks as well as comments regarding the possible effects of a revised LCD are simply not relevant. Even where collateral estoppel applies, beneficiaries will still have to submit claims for processing (*i.e.*, "present" their claims). The potential impacts of a revised LCD on future claims are irrelevant. All that is at issue in this case is the negative decision of ALJ Bryant and the Council for the particular months of coverage submitted by Mr. Wilmoth.

## CONCLUSION

The Secretary did not meet his burden to overcome the presumption of collateral estoppel by identifying statutes that "speak directly", *e.g.*, to the issue of collateral estoppel reflecting a Congressional' intent to abrogate the common law of collateral estoppel.

As to the actual elements of collateral estoppel, Mr. Wilmoth showed that each was present and the Secretary did not rebut that showing.

Accordingly, Mr. Wilmoth's motion for summary judgment should be granted.

Dated: November 25, 2020.

                                        Respectfully submitted

                                        */s/ H. Ruston Comley*
                                        H. Ruston Comley (MS Bar #102307)
                                        *Watkins & Eager PLLC*
                                        400 East Capital Street (39201)
                                        Post Office Box 650
                                        Jackson, Mississippi 39205-0650

        Telephone: (601) 965-1900
        Facsimile: (601) 965-1901
        rcomley@watkinseager.com

        */s/ James C. Pistorino*
        James Charles Pistorino (Admitted PHV)
        *Parrish Law Offices*
        224 Lexington Drive
        Menlo Park, California 94025
        Telephone: (650) 400-0043
        Facsimile: (412) 561-6253
        james@dparrishlaw.com

**OF COUNSEL:**

Robert R. Baugh
*Sirote & Permutt, P.C.*
Post Office Box 55727
Birmingham, Alabama 35255-5727
Telephone: (205) 930-5307
Facsimile: (205) 212-3860
rbaugh@sirote.com

## CERTIFICATE OF SERVICE

      I hereby certify that I filed the foregoing document electronically, using the CM/ECF system, which will send notification of such filing to all parties of record in the above-captioned matter.

      This, the 25th day of November 2020.

        */s/ H. Ruston Comley*
        H. Ruston Comley